## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MSP RECOVERY CLAIMS, SERIES )
LLC, *et al.*, )
       Plaintiffs, )
   )
v. )     Civil Action No. 3:22-cv-422–HEH
   )
LUNDBECK LLC, *et al.*, )
   )
       Defendants. )

### MEMORANDUM OPINION
**(Denying Plaintiffs' Motion to Alter or Amend Judgment,**
**or for Relief from Judgment)**

On April 21, 2023, Plaintiffs,[1] filed a "Motion to Alter or Amend Judgment or for Relief from Judgment" (the "Motion," ECF No. 95). In their Motion, they assert that the Court erred in granting Defendants'[2] Motions to Dismiss (ECF Nos. 32, 33, 36) and dismissing their Complaint with prejudice. (Mot. at 1–2.) The parties have filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. VA. LOC. R. 7(J). For the following reasons, the Court will deny Plaintiffs' Motion.

---

[1] Plaintiffs are MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; MSP Recovery Claims Series 44, LLC; MSP Recovery Claims PROV, Series LLC; and MSP Recovery Claims CAID, Series LLC.

[2] Defendants are Lundbeck, LLC ("Lundbeck"); Caring Voice Coalition, Inc. ("CVC"); Adira Foundation ("Adira"); and Theracom, L.L.C. ("Theracom").

## I.      BACKGROUND

On June 6, 2022, Plaintiffs filed a seven-count Complaint seeking relief under the Racketeering Influenced Corrupt Organization Act ("RICO") and various state laws. (Compl. at 46–80, ECF No. 1.)  Plaintiffs are assignees of various Medicare health insurance providers ("Assignors") tasked with recovering reimbursement or payment to Defendants.  Assignors offer Medicare benefits to enrollees through Medicare coverage. Pharmaceutical companies typically assist Patient Assistant Programs ("PAPs") by donating prescription drugs or money for financially impoverished Medicare enrollees. In return, these companies can receive tax deductions and reimbursement from insurers, like Plaintiffs' Assignors, who pay the other portion of patients' drug costs.

Lundbeck markets and distributes specialty neuroscience medications, such as Xenazine.[3]  CVC was a non-profit charity created to help qualifying patients afford the prescription co-pay obligations imposed by the patients' third-party insurance companies.[4]  Lundbeck contracted with Theracom to run its Xenazine Information Center ("XIC").  (*Id.* ¶ 106.)  The XIC facilitated access to Lundbeck's PAPs and referrals to independent co-pay foundations, such as CVC.

Plaintiffs brought this suit on behalf of Assignors, who are third-party payors that provide prescription drug benefits to patients.  Plaintiffs alleged that Assignors held Medicare contracts with the federal government and that Assignors' obligations to

---

[3] Xenazine is a medication approved for treating chorea (involuntary muscle movement) associated with Huntington's Disease.  (Compl. ¶ 94.)

[4] Defendant CVC is now defunct.  (Compl. ¶ 135.)  Plaintiffs allege that Adira is CVC's successor.  (*Id.* ¶ 138.)

2

reimburse for Xenazine prescriptions were triggered when patients paid their co-pay and received the drug from a pharmacy. (*Id.* ¶¶ 18, 29, 47, 111, 183.)

Plaintiffs contended that Lundbeck donated money to CVC, which CVC used to pay patient co-pays and, in return, CVC improperly provided Lundbeck with information about how its donations were being used. (*Id.* ¶¶ 106–10.) Plaintiffs maintain that this scheme injured Assignors by "artificially inflat[ing] the quantity of dispensed Xenazine and allow[ing] Lundbeck to raise the prices of Xenazine to supra-competitive levels." (*Id.* ¶ 113.) Plaintiffs primarily based their allegation on Lundbeck's no-fault settlement with the Department of Justice ("DOJ"), wherein Lundbeck agreed to pay $52.6 million for allegedly violating the Anti-Kickback Statute ("AKS") and the False Claims Act ("FCA"), among other reasons. (*Id.* ¶ 101; Ex. A at 3–4, ECF No. 1-2.) Defendants moved to dismiss Plaintiffs' claims for lack of standing and failure to state a claim upon which relief can be granted.

In a Memorandum Opinion and accompanying Order (ECF Nos. 93, 94) issued on March 24, 2023, this Court granted Defendants' Motions to Dismiss, dismissed Plaintiffs' Complaint with prejudice, and closed the case. The Court also held that, based upon a thorough review of the hundreds of pages of briefing on the Motions to Dismiss, that further amendment of Plaintiffs' Complaint would be futile. (Mem. Op. at 44–45.) Plaintiffs now move this Court to alter or amend its Judgment under Federal Rule of Civil Procedure 59(e), or, alternatively, to grant relief from its Judgment under Rule 60(b). They raise numerous arguments in support of their Motion, including that this Court erred in relying on certain non-binding case law and other authority, erred in failing to construe

3

certain allegations in Plaintiffs' favor, and erred in its analysis of damages. Defendants contend that Plaintiffs' arguments are meritless and that their Motion should be denied.

## II.   LEGAL STANDARDS

A Court may grant a motion to alter or amend judgment in three circumstances: "(1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993); *see also* FED. R. CIV. P. 59(e). A "'mere disagreement' with the Court's opinion does not rise to the level of clear error and cannot support a Rule 59(e) motion." *Pettis v. Nottoway Cnty. Schl. Bd.*, 2014 WL 12917975, at *1 (E.D. Va. Feb. 7, 2014) (internal citation omitted). "The 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). The threshold for relief under this Rule is high. *Id.*; *see also Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (explaining that reconsideration is appropriate only in "very narrow circumstances").

"The purpose of a Rule 59(e) motion is to allow the court to reevaluate the basis for its decision. . . . Motions for reconsideration are not at the disposal of an unsuccessful party to 'rehash' the same arguments and facts previously presented." *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F. Supp. 277, 280 (E.D. Pa. 1991); *see also Truth Techs., Inc. v. Arnold*, 2017 WL 11501502, at *1 (E.D. Va. Nov. 21, 2017). "[W]hatever may be the purpose of Rule 59(e) it [was not] intended to give the unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977).

4

The Fourth Circuit has explained that a decision is not clearly erroneous "by being just maybe or probably wrong; it must strike [the Court] as wrong with the force of a five-week-old unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 WL 520978, at *5 n.6 (4th Cir. 1995)) (internal quotations and alterations omitted). "It must be 'dead wrong.'" *Id.* (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Similarly, the "rationale underlying the use of Rule 60(b) is to permit the district court to correct an erroneous judgment and thereby avoid the necessity of an appeal." *Freschi v. Grand Coal Venture*, 103 F.R.D. 606, 608 (S.D.N.Y. 1984). Rule 60(b) provides for extraordinary relief and is only to be invoked upon a showing of exceptional circumstances. *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). "Where the motion is nothing more than a request that the district court change its mind, . . . it is not authorized by Rule 60(b)." *United States v. Williams*, 674 F.2d 310, 313 (4th Cir. 1982). "Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. The fact that a judgment is erroneous does not constitute a ground for relief under that Rule." *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 401 (4th Cir. 1995) (internal citation and quotations omitted).

### III. ANALYSIS

This Court previously granted Defendants' Motions to Dismiss (ECF Nos. 32, 33, 36) and dismissed Plaintiffs' Complaint with prejudice on March 24, 2023. Less than a month later, Plaintiffs filed this Motion essentially requesting the Court reconsider its

decision to dismiss Plaintiffs' claims. Plaintiffs' Motion fails to raise any new issues and simply rehashes arguments this Court has previously considered and rejected.

This Court concluded that, in accordance with *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489 (4th Cir. 2018), Plaintiffs, who acquired claims from third-party healthcare payors who reimbursed patients for Xenazine, cannot possibly show that Defendants' alleged violation "directly" led to Plaintiffs' alleged injuries. (Mem. Op. at 27–34.) Indeed, the sort of claim Plaintiffs raise is simply too attenuated and indirect.

Furthermore, although cited in this Court's prior Memorandum Opinion, the Court is not bound by the decisions set forth in *Caring Voice Coal., Inc.*, No. 21-21317-Civ, 2022 WL 3155035 (S.D. Fla. July 21, 2022), *R&R adopted*, 2022 WL 4448256, or *Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352 (11th Cir. 2011). It merely believed that such opinions were informative in resolving the matter at hand. "Reconsideration is not justified where a party merely 'attempts to put a finer point on his old arguments and dicker about matters decided adversely to him.'" *Truth Techs.*, 2017 WL 11501502, at *1. Plaintiffs' contentions regarding the Court's "damages analysis" is merely an attempt to relitigate this Court's decision, and therefore, the Motion will be denied.

However, the Court does not retreat from its previous conclusion regarding Plaintiffs' inability to successfully allege the existence of the requisite proximate cause. Upon considering *Caring Voice Coal*, *Ironworkers Loc. Union 68*, and other cases, the Court concluded that Defendants' alleged violation did not "directly" lead to Plaintiffs'

alleged injuries.  (Mem. Op. at 25–34); *see also Anza*, 547 U.S. at 461 ("When a court

evaluates a RICO claim for proximate causation, the central question it must ask is

whether the alleged violation led directly to the plaintiff[s'] injuries."); *Slay's*

*Restoration*, 884 F.3d at 493 (explaining that the analysis "turns on the *directness* of the

resultant harm, not the *foreseeability* of that harm" and "RICO causation requires a

proximity of [a] statutory violation and injury such that the injury is sequentially the

direct result—generally at 'the first step' in the chain of causation.") (internal citation

omitted) (alterations in original).

Since this Court's March 24, 2023 Memorandum Opinion, Plaintiffs and

Defendants have filed multiple Notices of Supplemental Authority.  (ECF Nos. 100, 103,

111, 112.)  In Plaintiffs' November 14, 2023, Notice, they argue that the Fourth Circuit's

decision in *Albert v. Global Tel\*Link*, 68 F.4th 906 (4th Cir. 2023) is directly on point

and binds this Court.  (Notice of Suppl. Authority at 1, ECF No. 111.)

In *Albert*, the Fourth Circuit addressed proximate causation for RICO claims.  It

stated that "RICO proximate causation is lacking when (1) there is a 'more direct victim'

from whom (or intervening factor from which) the plaintiff's injuries derive, or (2) the

alleged RICO predicate violation is 'too distinct' or logically unrelated from the cause of

the plaintiff's injury."  68 F.4th at 911.  A "more direct victim" case occurs when the

plaintiffs cannot show proximate cause because "the plaintiff's injuries derive from those

suffered by parties more closely or directly victimized by the defendant's wrongdoing."

*Id.*  These plaintiffs merely suffer "derivative or 'passed-on' injuries."  *Id.* (quoting

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613 (6th Cir. 2004)).  A "too distinct" case

occurs when the plaintiffs cannot show proximate cause because "the alleged RICO violation is too logically unrelated to the direct cause of a plaintiff's injuries." *Id.* at 912.

There, the defendants were "the largest providers of inmate calling services," and the plaintiffs were consumers who used the defendants' single-call products. *Id.* at 908–910. The plaintiffs brought RICO claims asserting that the defendants "illegally conspired to inflate the price of single [jail] calls, and in the process, materially misrepresented the amount of their transaction costs to justify the high consumer prices and low site commissions." *Id.* at 910. Based on the facts plead, the Fourth Circuit held that the plaintiffs and the government were both direct victims because "[p]laintiffs' injuries (paying inflated prices) don't derive from an injury to a party closer to [the] [d]efendants in the chain of causation." *Id.* at 913. It also found that the alleged RICO violation was logically related to the plaintiffs' injuries. *Id.* Accordingly, the Fourth Circuit concluded that the plaintiffs' complaint satisfied RICO's proximate-causation requirement. *Id.* at 913.

Unlike in *Albert*, this is both a "more direct victim" and a "too distinct" case. *See id.* at 911. In *Albert*, the plaintiffs were direct consumers of the defendants' service, and, therefore, the plaintiffs' injuries derived directly from the defendants' conduct. *Id.* at 913. Here, Plaintiffs fail to allege proximate cause because they are indirect purchasers, and the alleged causal chain is too far attenuated.

Moreover, as noted by Defendants, this Court previously cited *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, No. 22-cv-1026, 2022 WL 17220647, at *1 (C.D. Cal. Oct. 20, 2022), which dismissed Plaintiffs' RICO theory *without prejudice*.

The Central District of California has since dismissed Plaintiffs' same RICO claim *with prejudice. See MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, No. 22-cv-1026, 2023 WL 4162338, at *6 (C.D. Cal. May 19, 2023) (dismissing Plaintiffs' RICO theory with prejudice because "Plaintiffs fail[ed] to adequately allege that [the] [d]efendant agreed with its purported co-conspirators to either commit two or more predicate offenses or act in furtherance of a RICO enterprise.").

The Court also reiterates that Plaintiffs' assignment theories and litigation strategies have garnered harsh criticism from courts across the country. (Mem. Op. at 45); *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878–89 (7th Cir. 2021) (summarizing cases criticizing Plaintiffs' tactics and stating, "[f]ederal courts do not possess infinite patience . . . The plaintiffs' approach is not sitting well with many judges"); *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6 (N.D.N.Y. Sept. 5, 2019) ("Plaintiffs' tactics are a flagrant abuse of the legal system."). This Court shares their view.

While there are no grounds for reconsideration, given this second opportunity and upon further review, the Court clarifies that it believes that the Indirect Purchaser Rule ("IPR") does, in fact, bar Plaintiffs' claims. As noted in this Court's 45-page Memorandum Opinion, it was "persuaded by Defendants' arguments" regarding the IPR. (Mem. Op. at 18.) In their Motion to Dismiss, Defendants argued that the IPR precludes indirect purchasers, like Plaintiffs, from having standing to assert RICO claims. (*See* Lundbeck's Mem. in Supp. of Mot. to Dismiss at 17–20, ECF No. 39.) They cited numerous cases to support this contention, including the Fourth Circuit's decision in

*Levey v. E. Stewart Mitchell, Inc.*, 585 F. Supp. 1030, 1034–35 (D. Md. 1984), *aff'd*, 762 F.2d 998 (4th Cir. 1985), and *NCNB Nat. Bank of N.C. v. Tiller*, 814 F.2d 931, 937 (4th Cir. 1987), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990). Defendants also filed, as a Supplemental Authority (ECF No. 82), the Third Circuit's opinion in *Humana, Inc. v. Indivior, Inc.*, Nos. 21-2573 & 21-2574, 2022 WL 17718342, *1 (3d Cir. Dec. 15, 2022), whereby the Third Circuit adopted a bright-line rule that the IPR applies to civil RICO claims.

The Court was not convinced that the Fourth Circuit has adopted such a bright-line rule based on its reading of *Levey*. 585 F. Supp. at 1034–35. In *Levey*, indirect purchasers brought a civil action for damages against certain defendants for violations of federal antitrust laws, RICO, Sherman Act, and other legal frameworks. *Id.* at 1031, 1035. The District Court for the District of Maryland noted that:

> Not many courts have addressed whether particular plaintiffs have standing under RICO to make private claims for damages. However, at least one court has held that those indirectly injured by racketeering activities may not maintain a private action under RICO. *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir. 1982) . . . The court there held that those indirectly injured as a result of the RICO enterprise would not have standing to sue. Here, the plaintiffs can only make out a claim that they were indirectly injured by the defendants' activities.

*Id.* at 1034–35. The district court concluded that plaintiffs did not have standing to assert either their RICO or Sherman Act claims and dismissed the remaining state-law claims. *Id.* at 1035. When the Fourth Circuit affirmed this decision, it did not expressly comment on the issue of standing as it pertains to the IPR and civil RICO claims. *See*

*Levey*, 762 F.2d at 998.  However, the Fourth Circuit need not adopt a bright-line rule for this Court to decide that the IPR bars Plaintiffs' civil RICO claim.

Plaintiffs misconstrue this Court's Memorandum Opinion and attempt to use out-of-context statements to support its argument that they are not indirect purchasers.  They state that "this Court did find that Plaintiffs' Assignors were 'Medicare insurers *who must pay directly* . . . [for] Medicare beneficiaries' prescription costs.'"  (Pls.' Mot. at 3 n.4 (emphasis and alterations in original).)  In a paragraph in which the Court analyzes Plaintiffs' failure to adequately assert proximate causation, it stated: "Plaintiffs in this case are analogous to those in *Caring Voice Coal., Inc.* and *Ironworkers Loc. 68*.  They are Medicare insurers who must pay directly or reimburse Medicare beneficiaries' prescription costs."  (Mem. Op. at 32.)  A reasonable reading of these statements demonstrates that the Court intended to convey that the assignors in either case paid directly *or* reimbursed for prescription costs.  It drew no conclusion as to whether Plaintiffs are indirect purchasers.

Because this Court held that Plaintiffs failed to allege the proximate-cause element, which was dispositive of the case, it had no occasion to decide whether the IPR bars Plaintiffs' claims.  Based on the present record at hand, the Court now finds that Plaintiffs were indirect purchasers of Xenazine and reimbursed patients who purchased the drug.  (Compl. ¶¶ 18 ("Plaintiffs are companies that obtained assignments from their Assignors to recover reimbursement or payment from RICO Defendants."), 214, 363, 371.)  As in *Indivior, Inc.*, 2022 WL 17718342, at *2, this characterization "fits the description of a 'third-party payor' who is barred from recovery in a RICO action by the

indirect-purchaser rule." *See also Humana Inc. v. Biogen, Inc.*, No. 21-11578, 2023 WL 2743307, at *10 (D. Mass. Mar. 31, 2023).

Further, one week after the Court issued its Memorandum Opinion, a different court in a separate action "arising out of an alleged scheme to increase the number of prescriptions of drugs used to treat multiple sclerosis ("MS") through improper charitable contributions," held that the IPR barred Plaintiffs' RICO claims, noting that "[e]very circuit to have considered the issue has held that the rule also applies to civil RICO actions, and that indirect purchasers therefore do not have standing to assert RICO claims." *Biogen, Inc.*, 2023 WL 2743307, at *1. So too, here, Plaintiffs' claims are barred by the IPR.

## IV. CONCLUSION

Accordingly, for the aforementioned reasons, the Court will deny Plaintiffs' "Motion to Alter Judgment or Amend Judgment or for Relief from Judgment" (ECF No. 95).

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: January 2, 2024
Richmond, Virginia